UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACQUELINE ZIEGLER-ALLISON,

    Plaintiff,

vs.                                                                  CIVIL NO.:  04-CV-74505-DT

COMMISSIONER OF                                   HON. AVERN COHN
SOCIAL SECURITY,                                      MAG. JUDGE WALLACE CAPEL, JR.

    Defendant.
_____/

## REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is recommended that the Court grant Plaintiff's Motion for Summary Judgment in part, deny Defendant's Motion for Summary Judgment, and remand this case for proceedings consistent with this Report.

**II.    REPORT**

This is an action for judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits [DIB]. Plaintiff filed for benefits on October 24, 1984, and was determined to be disabled by Administrative Law Judge [ALJ] Edward H. Schiff on January 28, 1986. (TR 31-34, 150-57). On March 29, 1994, the Social Security Administration [SSA] notified Plaintiff of her disability cessation due to her improved health. (TR 219-22, 269). Plaintiff filed for reconsideration, and a hearing was held; however, a decision affirming her cessation of benefits was issued. (TR 233-34, 246-66). Plaintiff requested a hearing which was subsequently held on July 3, 1996, and a decision was issued to uphold the disability cessation

1

determination on August 29, 1996, by ALJ John A. LaFalce. (TR 426-33, 711-56). On April 24, 1998, the Appeals Council vacated the August 29, 1996, decision and remanded the case.[1] (TR 451-54).

Thus, an additional hearing was held on May 19, 1999, before ALJ John A. Ransom. (TR 757-88). On July 29, 1999, ALJ Ransom again upheld the disability cessation determination. (TR 532-45). On January 17, 2002, the Appeals Council remanded the decision dated July 29, 1999, to determine Plaintiff's date last insured. (TR 559-61). A supplemental hearing was held before ALJ Ransom on May 21, 2003. (TR 789-806). On July 17, 2003, ALJ Ransom determined the last date insured to be December 31, 2003. (TR 20-28). Again he upheld the cessation determination and found that Plaintiff was not disabled. (TR 20-23). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review on October 2, 2004. (TR 9-11). The Plaintiff has commenced this action for judicial review.

---

[1] The Appeals Council ordered the ALJ to "[o]btain additional evidence concerning the claimant's Crohn's disease and mental impairments . . . includ[ing] consultative internal medicine and mental status examinations." (TR 453). It further ordered that Plaintiff's mental impairments be evaluated and a Psychiatric Review Technique Form [PRTF] be completed. Id. Additionally, the Appeals Council ordered the ALJ to evaluate the case in accordance with Difford and SSR 92-2(6) and properly evaluate Plaintiff's past relevant work. Id.

**A.     PLAINTIFF'S TESTIMONY**[2]

    **1.     May 21, 2003, Hearing**

Plaintiff testified that she was born on February 9, 1961. (TR 792). Plaintiff testified she weighs one hundred and eighteen pounds, is five foot, five inches, and is right handed. Id. Plaintiff stated she lives with her husband, seven year old son, and a daughter that is almost eighteen, in a one story home with a basement. (TR 792, 795). She stated that she has been married since August 2002. (TR 792). She stated that she completed twelfth grade and received her high school diploma, but did not pursue further education. Id.

Plaintiff testified that her Crohn's disease has worsened since 1994 and 1995. (TR 793). She stated that the asthma "comes and goes," but is not better. Id. She stated that she has a nebulizer at home for her asthma and when that does not work, she goes to the hospital for treatment. Id. She indicated that she has not been to the hospital or emergency room for asthma this year; but she stated that she had been an inpatient once for Crohn's disease, and once as an outpatient for same this year. Id. In the year prior, she indicated that the asthma usually requires her to go to the emergency room three or four times on average, although she tries to control it at home with the nebulizer and medication. (TR 793-94).

Plaintiff testified that she does not suffer from side effects from her asthma medication, but that her medication for Crohn's disease; namely pain killers, such as Valium, cause her to get drowsy and lightheaded. (TR 794). She indicated that although she tries to avoid it, she has been

---

[2]This case has been remanded before as previously mentioned. Thus, Plaintiff also testified at hearings on July 3, 1996, and May 19, 1999. (TR 711-88). See Part II, infra. However, due to the specific nature of Plaintiff's argument on appeal, namely, that an improper hypothetical was posed to the Vocational Expert [VE] on May 21, 2003, the testimony from the previous hearings will not be summarized here. See Subpart E, supra.

taking about two Valium a day because her Crohn's disease is active. Id. She stated that after some recent tests, she found out that she has a partial blockage in her intestine. Id. She stated that the problem with the blockage began about two months prior to the hearing. (TR 796). She explained that she was in "tremendous pain." (TR 797). She indicated that they also found an infection and she is still fighting that infection. (TR 794, 805). She stated that she has been on medication for a month and half for the infection with no relief. (TR 805).

She testified that she is able to dress and bathe herself, but that she cannot vacuum, scrub floors, or do any pushing. (TR 795). She stated that her seven-year-old son vacuums and her daughter dusts. (TR 796). She explained that she cannot dust due to her allergies. Id. She explained that she has a dishwasher that everyone uses, but she cleans the counters. Id.

When asked about volunteer and social activities, she indicated that she used to volunteer a lot on days that she felt good, but she has not been able to in the past two years. (TR 795). She stated that her husband takes care of the yard work and before that she hired someone. Id. She stated that she planted some flowers sitting down, but she does not mow the lawn. Id.

Plaintiff testified that she does not sleep well and is usually up and down at night. (TR 796). She stated that she sleeps once or twice a day for one to three hours and occasionally four or five hours depending on her medication. Id.

She stated that she has trouble sitting for long periods of time depending on the chair and she will get up and lean against something and then sit again. Id. She stated that when she is in pain, she can only sit for about an hour before she needs to stretch. (TR 798). She explained that this is a problem when she has severe pain. (TR 797). She explained that she might go a week at a time without pain and it "comes and goes." Id. For example, she stated that she was working at a

"tanner" and had to be carried out due to the pain. Id. She explained that when she was working in February of 2002, she would work one or two six hour shifts part-time. Id.

Plaintiff also testified that when her disease is active, she cannot stand for long periods of time. (TR 798). She stated that she can sit longer than she can stand. Id. She indicated that she could stand "probably 10, 15 minutes." Id. She stated that walking hurts and that she has to "lean on stuff." Id. She stated that she lays on her left side, puts a pillow under one knee, and a pillow around her stomach when she is in a lot of pain to try to get comfortable. Id. She stated that when her pain is severe, she is in that position thirty percent of the time and the rest of the time her pain medication "kind of eases it up." (TR 798-99).

When her pain is active Plaintiff indicated that she does not lift laundry; rather, she pushes it across the floor. (TR 799). She stated that when she is not in pain she lifts a gallon of milk and laundry detergent, but currently she is unable to do same. Id. She explained that she has a twenty-five pound weight limit due to a separate disc in her lower back. Id. She stated that she also has problems bending and squatting when she is in pain and has a hard time getting back up. Id. She stated that due to her back problems she normally does not bend under any circumstances, but if she was not in pain she would be able to squat. (TR 799-800). She stated that when her pain is active she can go down stairs, but she cannot go back up them. (TR 800). She stated that she has some "normal days." Id. She stated that she does not have any limitations in the use of her hands. Id.

Plaintiff testified that she has a valid driver's license and usually takes her son to school and picks him up each day, which is three-quarters of a mile from her house or about five minutes. Id. She stated that she does not usually take long trips because she cannot drive when she takes her medication. Id. She stated that she does take longer trips when the pain is not severe. Id. On good

days, she stated that she can concentrate and focus fairly well, but with her medication she gets lightheaded. (TR 801).

Plaintiff testified that she has no income. Id. She stated that her husband has been off work for two months voluntarily due to her health problems, but just went back to work. (TR 800-01). She stated that he was taking home about four hundred and fifty dollars a week. (TR 801). She stated that she receives child support, and after her daughter graduates tomorrow, that will only be for her son. Id.

### B. MEDICAL EVIDENCE

Plaintiff's Motion for Summary Judgment challenges two technical aspects of her case: (1) the ALJ's failure to properly examine the evidence after the last date insured was re-established, and (2) the ALJ's failure to accurately describe the Plaintiff's mental limitations in his hypothetical question. Accordingly, due to the specialized and compact nature of Plaintiff's legal challenges, those portions of Plaintiff's medical record that pertain to disposition of her Motion are contained in the Analysis.[3]

### C. VOCATIONAL EXPERT'S TESTIMONY[4]

#### 1. May 21, 2003, Hearing

Timothy Shaner, a vocational expert [VE], testified at the hearing. (TR 801-04). He testified that Plaintiff had no past relevant work. (TR 802). The ALJ asked whether Plaintiff would

---

[3] See Subpart E, supra.

[4] Again, Vocational Experts [VEs] also testified at hearings on July 3, 1996, and May 19, 1999. (TR 711-88). However, due to the specific nature of Plaintiff's argument on appeal, namely, that an improper hypothetical was posed to the VE on May 21, 2003, the testimony from the previous hearings will not be summarized here. See Subpart E, supra.

be able to perform any work if her testimony was assumed accurate. Id. The VE stated that she would not, based on Plaintiff's testimony regarding her "need to sleep one to five hours daily due to medicational effects." Id. The ALJ then presented a hypothetical question to the VE in which a claimant "could perform light work but would require a clean air environment, no prolonged walking, standing, lifting, simple repetitive, ready access to restroom facility." (TR 802). The VE testified that such a claimant would have the residual functional capacity [RFC] for the following light occupations: general office clerk, 13,000 positions; self-service gas station attendant, 3,200 positions; and assembler, 12,000 positions. (TR 802-03). Further, the VE testified that such a claimant would have the RFC for the following sedentary occupations: reception clerk, 6,500 positions; information clerk, 1,800 positions; and order clerk, 5,600. (TR 803).

Plaintiff's counsel then questioned the VE. (TR 803-04). He asked whether the additional limitation of sitting or standing at will would affect the light positions. (TR 803). The VE testified that if sitting or standing was "totally discretionary, it would affect all of the assemblers." Id. Plaintiff's counsel then asked whether the need to lie down thirty percent of the day would preclude all work. Id. The VE answered in the affirmative. Id. Plaintiff's counsel asked how much time off an employer will allow an unskilled worker. Id. The VE stated that typically one excused absence per month is tolerated, and a further need for absences would preclude work. (TR 803-04).

**D.     ALJ'S CONCLUSIONS**[5]

    **1.     July 17, 2003, Decision**

After reviewing the testimony presented at the hearing and the medical evidence in the record, the ALJ found that Plaintiff "has severe impairments of Crohn's disease, asthma, and depression;" however, those impairments do not meet or medically equal those impairments listed in Appendix 1, Subpart P, Regulations No. 4. (TR 22, 26). The ALJ found Plaintiff's testimony to not be fully credible. (TR 24-25, 26). The ALJ determined that Plaintiff had the RFC to perform "work, which does not require lifting more than 20 pounds occasionally or up to 10 pounds frequently[,] . . . nonexertional limitations of the need to work in a relatively clean environment, inability to perform prolonged walking, standing or lifting, inability to perform more than simple, repetitive tasks and the need for ready access to restroom facilities." (TR 25). Therefore, the ALJ concluded that Plaintiff's disability ceased in March 1994. (TR 26, 28).

**E.     ANALYSIS**

Plaintiff essentially raises two claims in her Motion for Summary Judgment. Her Motion argues that the ALJ's decision is not supported by substantial record evidence because: (1) the ALJ failed to properly examine the evidence after the last date insured was re-established, and (2) the ALJ failed to accurately describe the Plaintiff's mental limitations in his hypothetical question.[6] In

---

[5]Once again, because this case has been remanded previously, the other decisions by the ALJs exist in the record. Where appropriate, these are mentioned in the Analysis. See Subpart E, supra. However, Plaintiff's Complaint and Motion for Summary Judgment specifically ask for review of the July 23, 2003, decision and subsequent Appeals Council's refusal to review same. (TR 9-12, 20-28). Therefore, the previous decisions dated August 29, 1996, (TR 426-33), and July 29, 1999 (TR 535-45), will not be reviewed in detail here.

[6]Plaintiff's Motion for Summary Judgment and Brief filed April 22, 2005 (hereinafter "Plaintiff's Brief"), at pages 7-16.

response, Defendant's Motion for Summary Judgment contends that the ALJ's decision is supported by substantial evidence.[7] The matter is now ready for decision.

### 1. **Standard of Review**

This Court's review of the ALJ's conclusions is limited. First, this case was remanded and "'[o]n the remand of a case after appeal, it is the duty of the lower court or the agency from which appeal is taken, to comply with the mandate of the court and to obey the directions therein without variation. . . .' Mefford v. Gardner, 383 F.2d 748, 758 (6th Cir.1967)." Davis v. Sec'y of Health and Human Servs., 634 F.Supp. 174, 178 (E.D. Mich. 1986). The findings of the ALJ regarding Plaintiff's disabled status are conclusive if supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g) (1997). Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla of evidence, but less than a preponderance of evidence. Brainard v. Sec'y of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989).

This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed. Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994). Even if the court might arrive at a different conclusion, an administrative decision must be affirmed if it is supported by substantial evidence. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). Finally, consideration of the whole record does not mean that the ALJ must mention or comment on each piece of evidence submitted. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); see also Thacker

---

[7]Defendant's Motion for Summary Judgment and Brief filed June 13, 2005 (hereinafter "Defendant's Brief"), at pages 9-20.

v. Comm'r of Soc. Sec., 99 Fed.Appx. 661, 665 (6th Cir. 2004) (unpublished). Applying these standards, I will analyze each of Plaintiff's claims.

### a. Last Date Insured

Plaintiff argues that the ALJ did not "properly weigh and consider all [the] additional evidence that fell outside the previous date last insured of June 1994 and [that] was not considered in the previous decisions."[8] First, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted).

Specifically, Plaintiff argues that it was in error for the ALJ to "adopt[] the summary of the medical evidence as contained in the decisions of August 29, 1996 and July 29, 1999," (TR 23), because the decisions have a last insured date of June 30, 1994, rather than December 31, 2003.[9] As Defendant points out, the ALJ "did discuss the evidence submitted in connection with the supplemental hearing in 2003."[10] When comparing the medical evidence in the 1996, 1999, and 2003 decisions, it is clear that the ALJs evaluated the evidence of record through the last date insured, December 31, 2003. (TR 23-24, 428-30, 539-41) (discussing treatment in 1984, 1987, 1988, 1993, 1994, 1995, 1999, 2002, and 2003). The only periods that could be disputed are the records from 1995 and 1999. However, the ALJ in the 1999 decision indicated that impairments were improved in 1995. (TR 540). Further, the ALJ evaluated the consulting examiner's physical

---

[8]Plaintiff's Brief at page 15.

[9]Plaintiff's Brief at page 15.

[10]Defendant's Brief at page 10.

and mental evaluations in 1999 (TR 497-517), per order of the Appeals Council, (TR 452-53), and found that the findings were consistent with the other evidence of record leading to a finding of nondisability. (TR 540-41).

Plaintiff does not argue that any specific evidence from the relevant time periods was not properly evaluated. After reviewing all the evidence, it appears that the ALJ did not err by incorporating the previous decision's discussion of medical evidence.

### b. Hypothetical

Plaintiff alleges that the ALJ's hypothetical question failed to accurately describe her mental limitations regarding her ability to concentrate and maintain persistence or pace.[11] It is recognized that an ALJ may rely on the testimony of a VE at the fifth step of the disability analysis to establish a significant number of jobs that are available for a person with claimant's limitations. See Felisky, 35 F.3d at 1035-36. The only requirement is that the testimony be "given in response to a hypothetical question that accurately describes the Plaintiff in all significant, relevant aspects." Id. at 1036. The question becomes whether the limitation of "simple, repetitive tasks" sufficiently describes a claimant, who as the ALJ found here has "moderate deficiencies of concentration, persistence or pace," and in his earlier decision, within an attached PRTF stated "often" has difficulties with concentration, persistence or pace such that they are unable to complete tasks in a timely manner. (TR 25, 548).

Plaintiff relies upon several cases cited below, including the case of Smith v. Halter, 307 F.3d 377 (6th Cir. 2001). In Smith, the ALJ also found that the plaintiff "often" had difficulties concentrating on the PRTF that resulted in a failure to complete work in a timely manner. Id. at 379.

---

[11]Plaintiff's Brief at pages 7-14.

11

That ALJ in Smith based his finding on the testimony of four physicians that found the plaintiff's concentration difficulties to be "minimal or negligible." Id.  Further, the ALJ in Smith rejected the opinion of the fifth physician who stated that the plaintiff could not work due to his "inability to concentrate." Id.  The court in Smith stated that the ALJ accurately characterized the plaintiff's limitations in that case, by "limiting him to jobs that are routine and low stress, and do not involve intense interpersonal confrontations, high quotas, unprotected heights, or operation of heavy machinery." Id. at 378.  Also, the Smith court found that the ALJ properly evaluated the plaintiff's mental impairments under Varley v. Sec'y of Health and Human Servs., 820 F.2d 777 (6th Cir. 1987).  Therefore, the court found that because the ALJ incorporated both concentration difficulties and problems related to timely completion of tasks as a result, that the ALJ's decision was supported by substantial evidence.

More recently, one district court within the Eastern District of Michigan has interpreted Smith, stating that "the Sixth Circuit has [] held that an ALJ's failure to include in a hypothetical question a PRTF finding that a claimant "often" has difficulty concentrating is not a basis for remand when the hypothetical question adequately describes that claimant's limitations arising from a mental impairment." Edwards v. Barnhart, 383 F.Supp.2d 920, 929 (E.D.Mich. 2005) (Hon. Friedman, B. A.).  However, the district court held that

> while finding that Plaintiff has a "moderate limitation in her ability to concentrate, persist and keep pace," the ALJ's limitations were with co-workers, supervisors and the public, and to 'jobs entailing no more than *simple, routine, unskilled work*" (R. 18-19, 248). While close, these are *not sufficient*, and do not fully convey Plaintiff's limitations in concentration to the VE. See Keyser, No. 03-60078; c.f. Webb v. Commr of Soc. Sec., 368 F.3d 629, 633 (6th Cir. 2004).  Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job. The current hypothetical question is not adequate on the issue of moderate limitations of concentration, persistence and pace for this Court to have any idea as to the number of the assembly, packing, and sorting or security guard jobs

12

> identified by the VE that would be excluded if quotas or other aspects related to moderate concentration limitations were added to the hypothetical question. Each of these jobs seems to require a degree of sustained concentration, persistence and pace. The ALJ's argument that Plaintiff's daily watching of television is not sufficient evidence on this record to conclude her concentration is not significantly impaired. Thus, the ALJ's hypothetical question is insufficient.

Id. at 930-31 (emphasis added). Even more recently, however, the district court for the Eastern District of Michigan has stated, "while the ALJ checked the 'often' box on the PRTF, his more specific and detailed assessment of Plaintiff's mental limitations noted a dearth of objective medical findings or treatment records that would support a finding of a major impairment in this area," and interpreted

> Smith and the other pertinent precedents as dictating that the focus be on the ALJ's detailed assessment of a claimant's limitations, as opposed to the ALJ's broad characterization of the claimant's deficiencies on the five-point PRTF scale. To be sure, all of the ALJ's findings, including those summarized on a PRTF, must be harmonized and incorporated into the hypothetical questioning of the VE. Yet, a particular assessment on a PRTF does not mandate a rigid checklist of restrictions that must be included in this questioning. Rather, a case-by-case determination is required, under which the ALJ must translate the broad PRTF classifications into a set of specific limitations that are properly rooted in the administrative record. Here, the Court finds that the ALJ properly carried out this function upon remand, and that his resulting decision should be affirmed as based upon substantial evidence.

Bohn-Morton v. Comm'r of Soc. Sec., __ F. Supp.2d __, 2005 WL 2433149, *3 (E.D.Mich. 2005) (Hon. Rosen, G.E.).

However, additional case law from this district court suggests that more often than not, a simple and routine task limitation is insufficient to support a limitation of "often" having difficulty in concentration, persistence, or pace for the purposes of establishing substantial evidence. In the present case, the ALJ stated that Plaintiff would could perform "simple, repetitive tasks." (TR 25).

> Courts have found that hypotheticals limiting a worker to "unskilled work" have not been sufficient to accommodate certain psychological limitations. Newton v. Chater, 92 F.3d 688 (8th Cir. 1996), held that a reference merely to "unskilled sedentary

13

> work" in a hypothetical question is insufficient to describe and accommodate concentration deficiencies; see also McGuire v. Apfel, 1999 WL 426035, at *15 (D.Or. 1999). This Court in Bielat v. Comm'r of Soc. Sec., 267 F.Supp.2d 698 (E.D.Mich. 2003) (quoting Andrews v. Comm'r of Soc. Sec., No. 00-75522 (E.D.Mich. December 18, 2001)) and citing Thomczek v. Chater, 1996 WL 426247 (E.D.Mich. 1996), has held that a hypothetical question including "unskilled sedentary work" plus the limitation of "jobs low at the emotional stress level" is not sufficient to accommodate a finding of a "marked" limitation in ability to concentrate or persist at tasks.

Eiseler v. Barnhart, 344 F.Supp.2d 1019, 1029 (E.D.Mich. 2004) (Hon. Fiekens, J.).  Further, in

Bielat, 267 F.Supp.2d at 702, the district court stated

> [i]n general, a reference to "unskilled, sedentary work" is not sufficient to describe deficiencies in concentration. See Newton v. Chater, 92 F.3d 688 (8th Cir.1996) (holding that a reference to "simple jobs" was insufficient to constitute inclusion of the impairments or deficiencies in concentration noted by the ALJ); McGuire v. Apfel, 1999 WL 426035 at *15 (D.Or. 1999) (holding that "simple work" was insufficient to describe claimant's deficiencies in concentration, persistence, or pace resulting in failure to complete tasks in a timely manner). The Commissioner notes that unskilled work by definition involves little judgment to perform simple duties that can be learned on the job in a short period of time. See 20 C.F.R. § 404.1568(a)(2001). As the magistrate judge argued, though, a job may fit that description and still require the ability to concentrate. Thus Bielat's ability to "learn, understand, remember, and perform simple, rote tasks on a sustained basis" is not necessarily enough to perform the sorts of jobs mentioned by the VE. For example, monitoring security cameras, a job the VE said could be performed by someone with the limitations in the hypothetical question, is unskilled (as it requires little judgment and may be learned in a short period of time), but if someone in that job could not concentrate and pay attention to the monitors, his performance would almost certainly be deficient.
> Furthermore, even if "unskilled" and "low stress" did reflect an inability to concentrate, this Court has previously held that a hypothetical question that only includes "difficulties in concentration" is insufficient to describe someone who displays "deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner ... often." Andrews v. Commissioner of Soc. Sec'y, No. 00-75522 (E.D.Mich. December 18, 2001); see also Thomczek v. Chater, 1996 WL 426247 (E.D.Mich. 1996) (finding that a hypothetical question saying that the claimant was "incapable of concentrating and focusing" was insufficient when the claimant often suffered from deficiencies in concentration because it did not deal with the claimant's specific situation and did not discuss the impact of having concentration deficiencies). The question here did not even include a reference to

>difficulties in concentration, so it was even less reflective of Bielat's deficiencies than the hypothetical question deemed insufficient in Andrews.

Nonetheless, this is not an issue that has been decided unanimously by the district courts and Circuits across this country as the undersigned has previously noted in other Reports. See e.g., Herriman v. Apfel, 2000 WL 246598, *3 (E.D. Mich. Feb. 11, 2000) (Hon. Duggan, P. J.) (emphasizing on remand that the ALJ "should determine the effect upon the VE's [testimony of suitable jobs] if he or she were to consider the ALJ's finding that [claimant] often has deficiencies in concentration."); Thomczek v. Chater, 1996 WL 426247, *2-3 (E.D. Mich. Jan 5, 1996) (Hon. Cohn, A.) (finding that the VE's "one reference to concentration problems" was insufficient to "cure" the ALJ's omission of PRTF finding that claimant "often" suffered deficiencies in concentration); Zeff v. Shalala, 45 F.3d 441, 1994 WL 721464, *1-2 (10th Cir. Dec. 29, 1994) ("Given that some level of concentration was necessary to perform all the jobs identified by the VE and that the ALJ found that [claimant] often experienced deficiencies in concentration, the ALJ should have solicited additional testimony from the VE as to whether and how the concentration deficiencies the ALJ found would affect [claimant's] ability to perform the jobs the VE identified.") (unpublished disposition; Table); but see e.g., Hollins v. Apfel, 160 F.Supp.2d 834, 841 (S.D. Ohio 2001) (held that "[r]egardless of the fact that the [ALJ's] PRTF characterized [claimant's] lapses in concentration as 'often,' and regardless of the definition that plaintiff's counsel chose to impose upon the term 'often[]'" on cross-examination of the VE, the ALJ's RFC assessment was supported by substantial record evidence and formed a "proper basis for the hypothetical posed[.]") (citations omitted); Smith-Felder v. Comm'r of Soc. Sec., 103 F.Supp.2d 1011, 1014 (E.D. Mich. 2000) (Hon. Rosen, G. E.) (finding that vocational accommodations of only "mild" stress and "simple one, two or three step operations[]" . . . "properly comport[ed] with the evidence and findings of the ALJ as

to Plaintiff's moderate limitations in concentration, social functioning, and tolerance of stress."); Brachtel v. Apfel, 132 F.3d 417, 421 (8th Cir. 1997) (ALJ's PRTF finding that claimant "often" had deficits in concentration and pace was sufficiently incorporated into the VE's hypothetical where claimant was specifically limited to performance of simple repetitive work free of attention to detail and normal production requirements); Gieseking v. Sec. of Health & Human Servs., 25 F.3d 1048, 1994 WL 228239, *7-8 (6th Cir. May 25, 1994) (ALJ's deviation from PRTF where the word "often" was used instead of the word "frequently" in hypothetical to VE was "meritless[,]" where ALJ's PRTF finding was "somewhat equivocal[,]" "the VE was aware of [claimant's] actual rate of production[,]" and "the VE was [] aware of the limitations to claimant's ability to concentrate and his pace.") (unpublished disposition; Table).

 Defendant points out that other circuits and even the Eastern District of Michigan's cases are not precedential authority.[12] Liebisch v. Sec'y of Health and Human Servs., 21 F.3d 428, 1994 WL 108957, *2 (6th Cir. 1994) ("District Court opinions have persuasive value only and are not binding as a matter of law.") (unpublished). Defendant goes on to cite a case within Liebisch, which held, "district judges in this circuit must not treat decisions by other district judges, in this and a fortiori in other circuits, as controlling, unless of course the doctrine of res judicata or of collateral estoppel applies. Such decisions will normally be entitled to no more weight than their intrinsic persuasiveness merits." TMF Tool Co., Inc. v. Muller, 913 F.2d 1185, 1191 (7th Cir. 1990) (quoting Colby v. J.C. Penney Co., Inc., 811 F.2d 1119, 1124 (7th Cir. 1987) (emphasis in original)). However, as can be seen by the citations above, Defendant himself relies on cases that are unpublished and outside the Sixth Circuit. Further, Defendant attempts to distinguish various cases

---

[12]Defendant's Brief at page 16.

relied upon here.[13] Nonetheless, the crux of this case relies on Smith v. Halter, 307 F.3d 377, (6th Cir. 2001) which *is* Sixth Circuit precedent.

As previously stated, under Smith "a case-by-case determination is required, under which the ALJ must translate the broad PRTF classifications into a set of specific limitations that are properly rooted in the administrative record." Bohn-Morton, __ F. Supp.2d __, 2005 WL 2433149, *3. The ALJ found here that Plaintiff has "moderate deficiencies of concentration, persistence or pace," and in his earlier decision, within an attached PRTF stated "often" has difficulties with concentration, persistence or pace such that they are unable to complete tasks in a timely manner. (TR 25, 548). Here contrary to Defendant's allegations, the record is not "devoid of evidence that Plaintiff was unable [to] maintain sufficient concentration, persistence, or pace to perform simple, repetitive tasks."[14]

On January 8, 1998, Plaintiff was examined by licensed psychologist, Edward G. Tava, Ed.D. (TR 541). He found she was "moderately limited" in her "ability to maintain attention and concentration for extended periods[]" and also in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."[15] (TR 516, 541). The ALJ reviewed this finding and found that this was consistent with his RFC. (TR 541). In fact, he included same in his findings per the PRTF. (TR 548). Further, on March 5, 2002, Plaintiff's mental health records indicate that she "has a lot of trouble getting through daily life functioning and

---

[13]Defendant's Brief at pages 17-19.

[14]Defendant's Brief at page 15.

[15]Plaintiff's Brief at page 14.

getting normal tasks completed." (TR 632). The ALJ also acknowledged the treatment in 2002, but does not note this specific finding. (TR 23-24). Although, the undersigned is aware that an ALJ need not mention or comment on each piece of evidence submitted, Black v. Apfel, 143 F.3d at 386, given the issue in this case, such evidence becomes critical. The record evidence as a whole does not suggest that the absence of a timeliness restriction in the hypothetical is harmless error as it was in Bohn-Morton, __ F. Supp.2d __, 2005 WL 2433149, *3 or Hollins, 160 F. Supp. 2d at 841.

Therefore, the ALJ did not properly assess Plaintiff's difficulties with concentration, persistence, or pace when stated that claimant was restricted to "simple, repetitive tasks." (TR 25, 27). It is suggested upon remand that the ALJ incorporate both concentration difficulties and problems related to timely completion of tasks as a result under Smith v. Halter, 307 F.3d 377.

### 2.   Remand Versus Benefits

The remaining issue is whether remand or an award of benefits is the appropriate remedy for Plaintiff. It is firmly established that under § 405(g), a court may remand for an award of benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." Faucher v. Sec. of Health & Human Servs., 17 F.3d 171, 174 (6th Cir. 1994)(citations omitted). More specifically, "[a] judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." Id. (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985)).

Unfortunately, the ALJ's adverse decision was deprived of substantial evidentiary support because the limitation of "simple, repetitive tasks" is insufficient under Smith v. Halter, 307 F.3d 377. Therefore, this case should be remanded to allow the ALJ to properly include the limitations

regarding difficulties with concentration, persistence, or pace that affect Plaintiff's ability to complete tasks in a timely manner.

### III.   CONCLUSION

For the reasons stated, I recommend that the Court **GRANT** Plaintiff's Motion for Summary Judgment **IN PART**, **DENY** Defendant's Motion for Summary Judgment, and **REMAND** this case for proceedings consistent with this Report.

Pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of the recommendation they may serve and file specific, written objection within ten days after being served with a copy thereof.  The parties are further informed that failure to timely file objections may constitute a waiver of any further right of appeal to the United States Court of Appeals.  United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

In accordance with the provisions of Fed.R.Civ.P. 6(b), the court in its discretion, may enlarge the period of time in which to file objections to this report.

**Dated:**  October 27, 2005              s/Wallace Capel, Jr.
                                          **WALLACE CAPEL, JR.**
                                          **UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

**CERTIFICATE OF SERVICE**

I hereby certify that on <u>October 27, 2005</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: <u>Janet Parker, Assistant United States Attorney, 101 First Street, Suite 200, Bay City, Michigan 48708, and Mikel E. Lupisella, 1121 N. Michigan Avenue, Saginaw, Michigan 48602,</u>

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s): <u>Social Security Administration, Office of the Regional Counsel, 200 W. Adams Street, 30th Floor, Chicago, Illinois 60606</u>.

                                                s/James P. Peltier
                                                United States District Court
                                                Flint, Michigan 48502
                                                810-341-7850
                                                E-mail: pete_peltier@mied.uscourts.gov